v. Dennis Clark Good afternoon. May it please the court, my name is Dennis Clark and I'm here on behalf of the appellant Mr. Terrence Ford. In the district court, the judge found a sentencing guideline range of 46 to 57 months for Mr. Ford. However, he sentenced Mr. Ford to 120 months, which was nearly two and a half times the low end of the range and over double the high end of the range. This was a substantial upward departure based largely on the completely speculative unproven notion that Mr. Ford was responsible for deaths, overdoses or other suffering in the community. Prior to sentencing, the court did not give notice to counsel on either side that it was contemplating a departure on this ground and thus violated Federal Rule of Criminal Procedure 32H, which requires such a notice under the circumstances and as well Federal Rule of Criminal Procedure 32I1B, which requires that the defense be given a meaningful opportunity to respond to such a departure and or a variance. Is the departure argument disappear if it was a variance? No, Your Honor, not at all. First of all, if I may address how I believe it's a departure, but I will tell you that the 32I1. You're kind of doing a summary. Go where you want to go. You seem to be starting to emphasize that, so I was starting to engage you. But if that's not where you want to start. No, it's fine, Your Honor. Clearly, there are rules applicable. That's what this case boils down to, following the rules established by the Federal Rule of Criminal Procedure, also by the case law in this circuit and due process. And what we have here is, first of all, it is our view that this is clearly a departure because the very specific language, the explicit language of the United States Sentencing Guidelines, particularly in 5K 2.1, 5.2, 5.7, 5.14, and 5.21, speak directly to the reasoning set forth by the court and the words and language used by the court when the court decided to have this upward enhancement. So clearly, in our view, this is a departure. Also, as this court said in United States v. Denny, a departure results... So in other words, we know that sentencing judges are allowed to disagree with the guidelines, right? The policy under... Yes, Your Honor. Beneath the guidelines, for example, the crack powder debate. But I thought of that as a variance approach. Am I misremembering or misperceiving? No, I think you're correct, Your Honor. It wasn't, but I guess that's why I thought it was a variance. It just seemed like this might be why there's something to your appeal, but it seemed to me that the key thing driving Judge Adams, after reading the transcript, was disagreement with the guidelines when it came to the opioid crisis. I mean, if there's one theme that just keeps coming up with both individuals' sentencing, it's that. And so that's why I'm struggling with the idea that this was, lo and behold, a departure. Well, let us look at it as a variance, then. Under the 32I1B, the court is required, per that particular rule of criminal procedure, to give the defendant a reasonable opportunity to respond. Now, this court in U.S. v. Coppinger in 2015, and, Your Honor, Judge Sutton, you were in the majority on that, and it was a unanimous opinion, held that the sentencing procedure in that particular case, and in all cases going forward, must give the defendant a reasonable opportunity to respond in a variance situation. So, regardless, departure, variance. In departure, there's two rules, I would suggest. In a variance, there's at least the rule under 32I1B that there must be a reasonable opportunity to respond. I just want to make sure I'm getting your argument. I mean, I thought in both cases Judge Adams issued a notice. He issued a notice. Okay, so what I'm most interested in is not, well, if you think it's a technical problem, tell me about the technical problem. But I want to hear why there was a surprise and how the surprise affected your argument. Because that's what would seem to me to be most likely to lead to unfairness. The notice that he submitted prior to counsel, before the sentencing, he said that he was going to look at the proximity of the residence where the drug activity occurred, in relation to local schools, number one. And number two, considering an upward variance on the history and characteristics of the defendant as set forth in the pre-sentence report. Now, certainly there's no reference in that notice. The surprise goes to the fact that he spent so much time talking about the opioid crisis. He talked about the deaths, Your Honor. Certainly, the opioid crisis was the background. But he said clearly that there was evidence. The sentence about deaths, it's a clause with several objects. And the last one is or suffering. Right? I mean, so you can play up the death point. I understand. But, I mean, it was a clause that had several disjunctive parts. Am I misremembering it? He made a finding. This is what's critical here. First of all, there was a surprise that this was an issue because he said there's circumstantial evidence that Mr. Ford is responsible for deaths, for overdoses, and other suffering in the community. He said there was circumstantial evidence. Did he say or or and at the end of it? I thought he said or. The specific language of his comments in this respect are essentially set forth on Record 65 ID 580-581 and also at 591. And the emphasis in both of those is deaths. He talks about, he didn't, it's quite a long, lengthy explanation. But the key to our position is that he said, and this is a quote from Judge Adams, the circumstantial evidence is such that anyone who is selling these powerful opiate drugs, more likely than not, preponderance finding, that there has been a death or an overdose or someone who has suffered because of that activity. Now, he clearly is attributing deaths and overdoses as well as community suffering to this person. Now, and he said in his notice, well, excuse me, in regard to beforehand, the government did not submit any evidence to this effect. The pre-sentence report said nothing about this. Of course, there was no submission, no evidence submitted at the time of the sentencing. All of this came out when he pronounced sentence. So there was no opportunity whatsoever for the defense counsel to address this issue, this concern, this reasoning. And all of this was new. How would the defense counsel address it other than to deny that there's no proof as to my client? There was no proof, and he would be able to argue that. And he did say that there was no proof, and the judge said there's circumstantial evidence, but none of it was apparent on the record. But, I mean, what else could you have done other than what you said? That's what I'm asking. Well, I think that he could have brought on the testimony. Interestingly, he called Sua Sponte at the sentencing. He called the principal agent on the case. He could have called him to indicate that there was no evidence of deaths, overdoses, or community harm caused by this particular defendant as a result of his particular activity. There could have been evidence submitted that there was no evidence of this. But he came forward out of the blue and said this, and then made this specific finding. He said by a preponderance. Out of the blue that there's an opioid crisis in Ohio? Oh, no, no, no, not at all, Your Honor. That's not it at all. So that can be the ground for disagreeing with the guidelines. Certainly. That's a general point. It has nothing to do with a given defendant. The general point is we are under punishing for this crime because this crime has led to an epidemic, which I am witnessing the suffering of, and if you're reading any books at all, you would see that it's real. So this kind of is Judge Reinhart's point. You really weren't going to get up there and say Sam Kanonis is wrong. There is no opioid crisis, and this is way overstated. We all recognize there's a crisis. Okay. But can't that be a ground for thinking the punishment should be higher? Certainly. But the ground here was he said there was deaths, overdoses, et cetera, caused by this particular defendant, and there is no evidence of that. So we have the argument, first of all, there's no notice, there's no opportunity to respond, and there's no evidence of it. All three. Okay. Well, you'll get your full rebuttal. Let's hear from your co-counsels. Mr. Brandt? Maybe you can talk a little bit about the school's point. I'd be interested. I think that was briefed by both of you, wasn't it? No, you didn't brief it? They briefed the school point? Okay. We can hear it on rebuttal then. Okay. Yeah, I guess you have a plain air problem on the school point. All right. Let's hear what you want to say. Jeff Brandt for Brian Williams. Good afternoon. Mr. Williams asking that the court vacate his sentence and remand for sentence hearing before a new district court judge. We believe the district court erred by failing to give this court findings of fact, by failing to clearly announce what its guidelines findings were, then departing or varying upward in a way that either is a completely unknown number of months, or possibly 60 number of months, or possibly more. Are you referring to the mistake in the guidelines calculation? Yes. You know the next question, so why don't you answer it? The answer is there's either an error over here or there's an error over here. Either the judge departed... I thought there was only one possibility, that he made an error that helped your client. Except then he says that I'm going to depart, I'm going to do a variance upward, because I don't think the sentence of 120 months is enough. And that means the judge isn't using... So if it had been higher, is that the point? No, the judge departed upward from 120 months, not 70 to 87, not somewhere in 92 to 115, but in fact 120, caused by the confusion of the order at which... And you would say it's a departure as well, same argument? Departure or variance doesn't... Doesn't make a difference to you? In our argument, it does not. Counsel, can't you also read what the judge said, that he was departing first from the guidelines and then from the mandatory minimum? Because he first says the guidelines are not sufficient in my views. And you're on page ID 464, and that section seems to suggest, Judge, that he's conflating the two, that they're the same. That guideline range is 120 months, which would completely ignore the downward departure granted earlier in the hearing. I think the order in which Judge Adams proceeded through the guidelines, which bounced around like a tennis ball, instead of in order, seemed to cause the judge... I mean, I've read the transcript. No one said, whoops, right? I mean, he did give everybody a chance to say, did I make a mistake? And no one said, whoops, right? The only time Judge Adams gave the defense, hey, do you have an objection about where I am right now? Yes, Judge, it was in Mr. Williams' favor. But later on in the hearing, when the judge jumps from, here's the guideline range that I'm finding, and says, okay, now I'm going to make an upward departure, variance. I'm just making the point. No one said at that point, wait, I'm not sure what you're doing. That's true. I concede that at that point, defense counsel did not say, hey, wait a second, did you say that the guideline range is 120 months? But there are two times in that hearing where Judge Bush pointed it out on 464, and then on the next page, 465. And obviously the 120 months to 10 years in many circumstances might be okay, but 10 years is not sufficient here. And then goes on to impose a sentence of 180 months. It seems to be an incorrect process, a failure to say this is the guideline range. The government's argued that what the judge has done here is okay because he went ahead and said the PSR was right and I'm adopting the PSR, therefore those are his findings. No one challenged the PSR? There were no objections to the PSR. The PSR was correct at the time because there was no downward departure for cooperation. So you can't adopt the PSR, which makes one calculation of what the appropriate guideline range is when you haven't gone to the sentencing hearing and received the one level downward departure for cooperation, which means we now can go below the guideline range. And despite the fact that the judge could go below the guideline range, by the time he's imposing an upward variance, it's gone. Anything under 120 months is in the rear view mirror and not even being considered anymore. Now we're using 120 months as the effective guideline range and going up 60 months to 180 months. So we have both the failure to give findings of fact, followed by an incorrect guideline range, followed by a tremendous upward departure, which we're arguing is substantively unreasonable because it's more than a two-full category upward variance based upon a run-of-the-mill defendant, even if it's fentanyl, even if it's heroin. We have a pretty light review of downward variances and it seems to me we ought to do the same for upward variances. It's highly discretionary. I mean, the only times I can think of substantive reasonableness challenges that, one, were where you just made a non-custodial sentence or, you know, just... But otherwise, I mean, if it's a drop, you know, there's a 50% increase. If it's a 50% drop, I'd be really shocked if we could find a substantive unreasonable decision from this circuit. To take a step from this client and just defense bar for a second, then I worry that our consistency in the guidelines is going to take a slippery slope downward and it's going to be 1983 again and we don't have the guidelines and we don't have what we thought were going to be, you know... It hasn't been the first time you've made this argument. No. Aren't you really eager to push for a greater downward variance and who cares that it leads to disparate sentencing? I mean, that's the norm. It should be the norm. That's what I would do if I were in your shoes. But if we're going to go ahead and say that an upward... We can just go as far up as we want out of a Kembra argument that, you know, I don't think that the guidelines take care of it here and someone can suffer in this way with this kind of upward variance simply because the judge felt that this person who only had seven criminal history points was low end of Category 4, I'm going to sentence him to something that's in excess of what he would be with Category 6. And I worry that if we're going to allow that to happen, sometimes we'll win with downward departures, but are we going to lose just as much with upward variances? I don't know. It seems like out of certain judges... Aren't the statistics not exactly symmetric between upward and downward variances? No, they're not. But I found this case troublesome and very different than anything I had ever seen before where I'm not even sure what I'm going to argue is the upward variance because I don't know what the finding of fact was on what the guideline range is and how much the departure is. Is it 60 months? Is it 87 months? Is your theory that if he'd done the guideline calculation correctly, he would have gotten a lower variance? If the upward variance was 60 months, but he took it from the correct guideline range, in any correct guideline range below 120 months, Mr. Williams would have a shorter sentence. The Molina-Martinez case applies here because, yes, the guideline range used before the variance was higher than if the guideline range would have been correctly calculated. Thank you. Thank you. Appreciate it. You've got a question, Judge Bush? We can get it on rebuttal. Thank you. Great. Good afternoon. May it please the Court, Matthew Call for the Government. I'll begin with Defendant Williams since that's what we were just discussing. There were two different opportunities in the record for Defendant Williams to raise any kind of objections to how the district court proceeded. That just means plain air applies, but we still have to figure out. Certainly, Your Honor. I think he's trying to say it's hard to know exactly what the judge would have done with the correct calculation. Well, Your Honor, I'd also argue we may even be past plain air or we may be into a waiver situation because at page 427, when the guidelines summary was placed in the record by the assistant U.S. attorney, the court then turned to defense counsel, asked if he agreed with it, and he stated that he did. The district court then adopted it. Had he sat pat, had he not said anything, we might have a plain air. Even if we are under a plain air standard of review, though, the defendant hasn't satisfied that because, as you pointed out, Judge Sutton, if there was error in this case, it resulted in a guideline range that was lower for the defendant. They haven't cited any case where the district court used a lower guideline range and that was found to have harmed the defendant.  That's what the probation department used in preparing its pre-sentence report. There were no objections to that. Base offense level of 24 based on 140 grams of fentanyl. There were no objections to that raised before sentencing or at the outside of the sentencing hearing. The only change occurred due to the one-level departure for substantial assistance. The way the government calculated that was to look at the defendant's mandatory minimum that had applied of 120 months. Given that he was in Category 3, the first offense level that included 120 months was offense level 27. The government asked the court to go down one level from that and also to give the defendant three levels for acceptance and responsibility, taking him to a 24. Defense counsel stated affirmatively that he agreed that that was how it should be done and the district court said that it adopted it. There were no factual disputes at the sentencing hearing. The defendant didn't dispute the... We'll focus on Ford because I think Ford preserved that after the Bostic question. So that wasn't something you recommended. That wasn't in the PSR. That came from the judge. Now the judge did alert people and obviously had done this research. But what do we do with that in an urban setting, which this was? Well, it was in this particular case, and I think it's proper for a district court to consider the neighborhood in which a crime occurs. That may put more people at risk, and I don't think it's improper for a district court to consider that when looking at the seriousness of the offense, the need to protect the public, which are all relevant 3553A factors, for the court to consider. You seem to be focused on the distance to schools within the area, and if it's an urban setting, you're always going to be within a mile of a school. True, but the Northern District of Ohio contains both urban areas and very rural areas. So for a district court judge to conclude that one poses a greater risk to the public, I don't think is an unreasonable conclusion for the court to reach. Your Honor, you meant that he is sentencing on the crime, not on the defendant and how he committed the crime. It seems to me there's two different things. Well, he's including both, Your Honor. I think the distance to the school goes to the nature and circumstances of the offense. But just be clear, this crime had nothing to do with schools. It did not, Your Honor. There was no evidence of them dealing drugs in school, and the court did not reach that finding. In fact, there was evidence about where the drugs were dealt, and you'd be pretty surprised to see a lot of kids there. It was a short distance from a school, and the court took that into account. Neither defendant challenged the accuracy of the court's information, of the facts that the court was presenting. They just argued that it wasn't a proper fact to consider. It seems like their perspective is, what seems unfair about it, is if you're caught dealing any type of drugs in an urban setting, judges will always be able to say, what about the kids? And that seems like it's not doing this fairly. I disagree with that, Your Honor, because I think it goes to the harm that it poses the public, the seriousness of the offense and the need to protect the public, all of which are relevant Section 3553A factors. Then you're sentencing the crime and not the person who committed the crime. I think the record shows that Judge Adams considered both. For each defendant, he did a thorough review of each defendant's personal history and characteristics and each of their backgrounds and fully considered that before he imposed his sentence. Are you aware of the guidelines, the Sentencing Commission having considered proximity to a school and determining any kind of punishment under the guidelines? I'm not aware of the Sentencing Commission considering that, Your Honor, but it certainly weighs into the nature and circumstances of the offense, which is a relevant Section 3553A factor. So is it the government's position that if there's a factor that hasn't been considered by the Commission in formulating the guidelines, that that's a permissible basis for variance from the guidelines? I do, Your Honor, if it is rooted in Section 3553A factors as it was here because it goes to the seriousness of the offense, the need to protect the public, and the general nature and circumstances of the offense, which the court is not only permitted but is required to consider. Turning back to Judge SirHeinrich's point, the record shows that the district court fully justified the reasons for its sentences and for both defendants thoroughly considered each defendant's background, personal history, and characteristics. For Defendant Williams, that was set out in 11 different pages of the record over page 456 to 465. For Defendant Ford, it was over page 579 to 585, and he looked in detail at each defendant's background. As to Defendant Williams' argument that the court varied from an improper range or varied from the mandatory minimum, that's not supported by the record. The district court did not tie its variance to the underlying range or to the mandatory minimum. The district court adopted the calculation that the parties stipulated to. The court then did the thorough review of the 3553A factors and then came back and considered the guideline range, said that that would not be sufficient. Then it next considered whether a sentence at the previously appropriate mandatory minimum, 120 months, would be sufficient and said it wasn't. The court then considered what sentence would be appropriate and determined that 180 months would be appropriate. A district court is not required to calculate the amount of its variance and route it to the guidelines. A court can do that, but is not required to do that. The court's only job is to impose a sentence that is sufficient but not greater than necessary, and that's what was done here. Both defendants' sentences were substantively reasonable. As to Defendant Williams, yes, he was criminal history category 3, but that ignores the fact that this was his fifth drug-related conviction. He had a 1991 drug trafficking, which was too old to count, a 1995 federal drug trafficking conviction that was too old to count. He had served 72 months on that federal conviction plus a 27-month consecutive term of supervised release when he violated that. He had a possession of cocaine with firearm specification four-year sentence and a 2014 heroin trafficking sentence for which he got a break. He only got 18 months of probation. He was back out and committing the offense that brought us here today within a month of ending that term of probation. So the sentence was substantively reasonable based on the defendant's background. The court considered the relevant 3553A factors, the need to protect the public, the need to provide specific deterrence, and the need to deter others. As to Defendant Ford's argument, he couches this as if it was a departure. I think a fair review of the record shows that at no time whatsoever did the court ever look at Chapter 5K or subchapter 5K of the guidelines and couch it in terms of an upward departure. The court, after allocution and argument, adopted the guidelines in the PSR, and then it said it would turn to the other statutory factors, and that's at page 578 to 579. And then, as I said, thoroughly reviewed those 3553A factors from page 579 to 85. The court commented on the nature and circumstances of the offense, the need to provide just punishment, adequate deterrence, protection of the public, and Ford's own personal history and characteristics. These are all 3553A factors. This was a variance under 3553. It was not a departure. Even so, the court had provided notice before the sentencing that it was contemplating a sentence above the advisory guidelines range. So there was no error in how the court proceeded. And as to Defendant Ford's sentence, it was also substantively reasonable. The court looked at his background. The court considered the full nature and circumstances of the offense and his personal history and characteristics. And again, the factor that the court found most compelling was Ford's lengthy criminal history. Previous 16-month sentence, 3-year sentence, and then a 7- to 25-year sentence for which he served 8 years in prison, none of those had deterred him. And the court found that because an 8-year sentence hadn't deterred him that a slightly longer sentence was necessary for Defendant Ford, and it chose a 10-year sentence. And that's not substantively unreasonable. That's simply a court weighing the factors. Turning to Mr. Ford's argument that there was some sort of information that was excluded or not disclosed to him, the Coppinger argument, I would simply note that the facts here versus Coppinger are vastly different. In Coppinger, the court considered 33 pre-sentence reports of co-defendants that had never been disclosed to the defense. And it considered all of the information on that, and the court analogized the 33 co-defendants as victims of the defendant's conduct. And this court held that that was a unique finding, an unusual thing to rely upon, and because the defendant, Mr. Coppinger, hadn't had access to those 33 pre-sentence reports, that there was a technical violation of Rule 32. Here, the court's conclusion was drug trafficking harms people. This was an argument that was reasonably foreseeable to the defendant. And the Coppinger court spoke of the fact that the argument about victims, or the information about victims, was not reasonably foreseeable to the defendant in that case. Here, the argument that drugs harm people in the community certainly was reasonably foreseeable. Defense counsel Below basically conceded the point at page 589, where he agreed with the court that drug trafficking does harm people, but made the argument that there was no direct evidence that this particular defendant's drugs had led to anyone's death or serious bodily injury. And as Judge Sutton pointed out, in the transcript in this case, that's not what the court found. The court found, specifically, the circumstantial evidence is that anyone who is selling powerful opiate drugs, more likely than not, either there has been a death, or an overdose, or someone who has suffered because of that activity. The conclusion that Judge Adams reached, that drugs are harmful to people, given the climate of today, I don't think took anyone by surprise and was not reasonably foreseeable. You can't turn on the news, read a newspaper, without seeing that. As I was sitting down to breakfast this morning at the hotel, the front page story in the USA Today was, horror of opioid abuse begins with a pill bottle. The newspaper's enrollment was accurate. That's true, Your Honor. But I don't think anyone disputes that drugs are harmful, and that we're facing an opioid crisis in this country. Judge Adams, who is on the front line, as all district judges are, certainly know what is harming people, what we're seeing an increase of damage from, and not. It wasn't improper for the court to consider that. Had the defendant been unduly surprised by that, he could have asked for more time to respond to that. He didn't. In response to the Bostic question, he didn't say, Judge, I was surprised by your conclusion that drugs are harming people, drugs are killing people. I need more time to research that and address that. He didn't ask for that additional time, because I believe, as Judge Sirhiner pointed out, that's really undeniable at this stage in our community. So the district court judge stated that he had a philosophical disagreement with the guidelines, that he felt that, as a matter of policy, they were too low for these types of offense. That's a district judge's right. District judges can find that the guidelines don't meet the appropriate needs of sentencing, and that's what this judge concluded. He weighed the appropriate nature and circumstances of the offense, considered each defendant's personal history and characteristics, and determined a sentence that he believed was appropriate to meet the needs of sentencing. And we don't believe that either sentence was unreasonable or inappropriate. So we would ask this court to affirm. Thank you. Thank you. Okay, Mr. Clark. Thank you. May it please the court, in my brief time for rebuttal, I want to make it perfectly clear that no one is suggesting that there isn't an opioid crisis and it harms the community. The key here for this particular defendant, Mr. Ford, was there was a specific finding by proponents of the evidence that he was responsible for deaths, overdoses, or other harm to the community. And there is no evidence of that. The government concedes there was nothing on the record about that such evidence. There's nothing in the pre-sentence investigative report. Why didn't you ask him after the ñ I mean, the whole point of the Bostic question is to get clarification. Judge, do you mean to be talking about the opioid crisis in general, or do you mean to be saying my client created these deaths? Because if it's the latter, I think we need to talk. But no one did that. And so then we're ñ that puts us in plain air land. And then we give the judge the benefit of the doubt, which it's easy to do here, by thinking he's really talking about the crisis and its impact on the community in general. Well, Your Honor, respectfully, he had four different objections in response to the Bostic question. And I'm suggesting that he did challenge that, but that was after the imposition of the sentence. And in one ñ Well, I mean, that's the way we do it. I mean, we wait till the end. But that's not a reasonable opportunity to respond as required by the rules. Now, in an earlier argument in the case before ours, the question was asked, shouldn't there be one rule for everyone? I'm saying here, clearly the rules of criminal procedure ñ and I think this case boils down to the correct procedure wasn't followed. And here, the procedure wasn't followed. There's not fairness because of ñ there wasn't an opportunity to respond. And then secondly, there is no evidence of this. It's virtually admitted. It's just that it's out there somewhere that these are causing problems. And there's no question about that. But he made his finding on a preponderance standard that he was ñ that Mr. Ford was responsible for deaths and overdoses. And that led to him giving this huge, huge upward departure or variance, whatever you want to call it, whether there's a variance or not. He did not follow the rules. Are you concerned about the schools point? You haven't raised that yet. I would rely on the brief. But I will say, in regard to the schools, what we made ñ we made the argument that, first of all, it was alluded to earlier, that in this particular urban area, any drug activity is going to be within some proximity to a school. And secondly, interestingly enough, every federal ñ all the federal standards, not applicable necessarily, but it is a guidepost, and that is the 1,000 feet that's talked about in federal statute. And that is, if there's ñ within 1,000 feet, there's an enhanced sentence. Here, the closest was 1,800 feet. That was the closest. So there's really nothing here out of the ordinary, nothing different, certainly nothing within that 1,000 feet that would call for this enhancement, which ended up being, you know, in combination, a rather very serious enhancement. But we would ñ that was certainly one of the reasons we challenged. We also challenged, of course, in the brief, the drug quantity, because that was another interesting point. The judge, Sue Esponte, called this witness. Thank you. You're over your time. Okay. Thank you very much. Randy, do you have time? Yeah. Thank you, Your Honors. We didn't cite any case where a court has found, like Molina-Martinez, that there's an error when there's a lower range used, because that didn't happen here. It didn't happen here. The two times the judge explains what the judge is going to do in relation to an upward variance and talks about rejecting the guidelines, he does so right next to saying 120 months. The guidelines aren't going to work here because 120 months isn't enough. Next page. The guidelines just aren't sufficient here because 120 months aren't enough. That is, I think, telling the court that at a minimum, there's confusion on what the judge has decided the applicable guideline range is, and there's at least a really good chance, using the language of the Love case, a really good chance that the judge used the wrong guideline range before applying the upward variance. And I don't think that conflagration of those two facts is that crazy when the government, in its brief on page 40, pretty much does the same thing, saying after rejecting the guidelines, the district court found that the sentence longer. What do you say to the government's waiver point? This isn't waiver because the error occurred after the defense attorney said, yeah, I agree with that guideline range. That guideline range. I agree that there was no objection made, but we can't rely on the exchange between the judge and the defense attorney about, hey, that's the correct guideline range because at that time they're talking about something less than 120 months. When later in the hearing, the judge makes the mistake that we get from the cases we cited in the brief where there's one range stated but another one used, when the judge then uses a different one and then makes a variance, yes, there's no objection, but that's not affirmative waiver. That's not agreeing that 120 months was correct. That's failing to object to 120 months more of a forfeiture. Thank you, Your Honors. Thanks to all three of you for your helpful briefs and oral arguments. We really appreciate it. The case will be submitted, and the clerk may adjourn court. Thank you. Thank you.  Thank you. Thank you. Thank you.  Thank you. Thank you.